UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **QUWANDA CANNION PHILLIPS,** | CASE NO.: 6:19-cv-02137-RBD-LRH |
| **Plaintiff,** | |
| v. | |
| **FEDEX GROUND PACKAGE SYSTEM, INC.,** | |
| **Defendant.** | |

## DEFENDANT'S BRIEF REGARDING RULE 11(B) SANCTIONS

Defendant, Fedex Ground Package System, Inc. ("the Company" or "Defendant" or "FedEx Ground), by and through undersigned counsel, in Response to the Court's Order requiring same, respectfully submits this Brief regarding whether opposing counsel should be sanctioned for violating Federal Rule of Civil Procedure 11(B).

**I.   Background**

Ms. Quwanda Phillips ("Ms. Phillips" or "Plaintiff") brought claims against her former employer for racial discrimination in violation of 42 USC 1981 (Count 1), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII")(Count II), and for retaliation under Title VII (Count V).[1]  This matter went to trial beginning on June 27, 2022 and resulted in a jury verdict in favor

---

[1] Counts III and IV were abandoned by Plaintiff.

of the Defendant on the two Title VII counts and in a dismissal of the § 1981 claim following the Defendant's Rule 50 motion.

During his rebuttal closing argument at trial, Plaintiff's Counsel claimed that one witness, Marquel Kimbrough, testified that he heard a manager for FedEx Ground state that "black package handlers are not smart enough to load trucks." Immediately following this rebuttal closing argument, counsel for Defendant vehemently objected to Plaintiff's counsel's false claim regarding Mr. Kimbrough's testimony on a point that was central to the entire race discrimination allegations.

Plaintiff then filed a post-verdict motion pursuant to Fed. R. Civ. P. 59(a) and (e) based largely on the continuous claims of witness testimony that does not appear in the record.  Specifically, in the motion for a new trial, Plaintiff stated "Plaintiff presented direct evidence of discriminatory intent through the testimony of Marquel Kimbrough who testified that David Antun made the comment that 'blacks are not smart enough to load trucks.'"  Mr. Kimbrough's testimony was not rebutted during the trial."  (Doc. 120, p. 5).

On the next page of the motion, Plaintiff stated again "The Defendant did not produce any evidence to rebut Marquel Kimbrough's statement testifying that David Antun made the comment that 'blacks are not smart enough to load trucks."  (Doc. 120, p. 6).

Two pages later, Plaintiff again stated "The Court could not recall the testimony from witness that David Antun stated Black people were not smart enough to load trucks when in fact testimony did come forward by Marquel Kimbrough stating that David Antun did say Blacks were not smart enough to load trucks." (Doc. 120, p. 8)

However, **Marquel Kimbrough never testified that Mr. Antun made any comment that Blacks were not smart enough to load trucks.** Instead, as is unmistakable from the official court transcript which Plaintiff could easily have requested before filing a motion containing repeated blatant falsehoods, Mr. Kimbrough testified as follows in his direct examination by counsel for Plaintiff:

> Q: Okay. Now, did you ever hear any type of racial comment made by David Antun?
>
> A: Any type of racial comment?
>
> Q: Yes.
>
> A: I heard him – I wouldn't say he would go as far as saying the N word, if I can say that. He never went that far, but he did stereotype me, me and Hugh. He did do that part.
>
> Q: Okay. Now, when you say "stereotype," what do you mean?

>A: Stereotype, okay.  So basically – so I'm going to tell the story.  So basically I was a member on the line.  I was scanning, and he stared at me for a while.  You know when somebody is staring at you.  You can feel it.  So he walked in front of me, came to the side where I was.  And he said, I hope you're not affiliated.  And I looked around, and I said "affiliated."  What do you mean?  Because I had this red belt I always used to wear all the time at work.  I had this red belt.  And he said, you know what I'm talking about?  The Bloods and the Crips." (p. 18-19 testimony of Marquel Kimbrough, attached to Doc 128 as Exhibit 1).

Following Mr. Kimbrough's testimony regarding this one incidence of Mr. Antun asking him if he was "affiliated", counsel for Plaintiff asked Mr. Kimbrough specifically if he heard Mr. Antun make any other racial comments.

>Q: Okay. Okay.  All right.  And do you recall him making any other racial comments to you?
>
>A: Not to me.  He never came back around to say anything bad to me like that, never.
>
>Q: Okay. Are you aware – are you aware of any other racial comments that he made?

- 4 -

> A: I wouldn't say comments. It was more like he was action with it. Do you know what I'm saying? Because everybody not verbal when they do stuff like that. It was more hands on, you know, so it was more that than anything." (p. 20, 21 of the testimony of Marquel Kimbrough, attached to Doc 128 as Exhibit 1).

Accordingly, far from testifying that he heard Mr. Antun say black employees are not smart enough to load trucks, Mr. Kimbrough specifically testified that he <u>didn't hear</u> Mr. Antun make any comments regarding race outside of a question regarding Mr. Kimbrough's "affiliation" which he believed had to do with his clothing.

Following Defendant's response to Plaintiff's motion, which included the transcript of Mr. Kimbrough's testimony, this Court issued a *sua sponte* Order to Show Cause why Plaintiff's Counsel should not be sanctioned for violating Rule 11. (Doc. 130). Plaintiff's Counsel responded that he misremembered Mr. Kimbrough's testimony. (Doc. 131). This Court then issued an Order requiring Defendant to file a Brief stating its position and any supporting case law as to whether Plaintiff's Counsel should be sanctioned for failing to comply with Federal Rule of Civil Procedure 11(B). (Doc. 141).

**II.     Sanctions Under Rule 11(B)**

Fed. R. Civ. Pro. 11(B) specifically requires that, before signing a court filing, counsel certify that "the factual contentions have evidentiary support."  See *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, ... streamline the administration and procedure of the federal courts.")  "[M]aking a knowingly false statement or exhibiting deliberate indifference to obvious facts is akin to contempt and warrants *sua sponte* Rule 11 sanctions." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 2011 WL 7030963, at *3 (M.D. Fla. Nov. 10, 2011), *report and recommendation adopted*, 2012 WL 115585 (M.D. Fla. Jan. 14, 2012). Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." Fed.R.Civ.P. 11, Advisory Committee Notes, 1993 Amendments. Every lawyer is an officer of the court and, as such, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal. *Bautista v. Star Cruises,* 696 F. Supp. 2d 1274, 1278 (S.D. Fla. 2010); *Burns v. Windsor Insurance, Co.,* 31 F.3d 1092, 1095 (11th Cir.1994). Therefore, "[a]ll attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our

system of justice functions smoothly." *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1546 (11th Cir.1993).

Judges have discretion to decide whether, and how, to sanction an attorney violating Rule 11. Pursuant to Rule 11(c)(4), a "sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." The sanction may include "an order to pay a penalty into court" if the Court is acting *sua sponte*, as it is here. Fed. R. Civ. P. 11(c)(4). The Court must also consider the following factors in fashioning the appropriate sanction:

> "[w]hether the improper conduct was willful, or negligent"; (2) "whether it was part of a pattern of activity, or an isolated event"; (3) "whether it infected the entire pleading, or only one particular count or defense"; (4) "whether the person has engaged in similar conduct in other litigation"; (5) "whether it was intended to injure"; (6) "what effect it had on the litigation process in time or expense"; (7) "whether the responsible person is trained in the law"; (8) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case"; and (9) "what amount is needed to deter similar activity by other litigants." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1250 (M.D. Fla. 2017)(*Thomas v. Early Cty.*, Ga., 518 Fed.Appx. 645, 646 (11th Cir. 2013)(quoting Fed. R. Civ. P. 11(b), Adv. Cmt. Notes to 1993 Amend.).

For the reasons addressed above and in its Response to Plaintiff's Motion to Set Aside Verdict, Defendant believes that the testimony at issue was so central to the Plaintiff's case that it is very difficult to accept that it could have been

misremembered so completely. Further, the false allegations regarding Mr. Kimbrough's testimony were made twice at critical stages – during the rebuttal closing argument and then in a motion asking for a new trial – after Plaintiff and Plaintiff's Counsel had heard Defendant's Counsel object to their falsity during the rebuttal closing argument. Plaintiff could have requested the transcript immediately before filing the post-verdict motion, or she could have corrected her claims at any time between August 1, 2022 when Defendant filed its response with a copy of the transcript and December 13, 2022 when the Court ruled on the matter and issued an Order to Show Cause. Plaintiff did not do so.

Defendant submits that this Court could order sanctions under either Rule 11 or the Court's inherent authority based on Plaintiff's continued reliance of testimony not supported by the record in violation of duty of candor under Rule 11(B). Defendant was injured, as contemplated by the rule, in having to spend time and expense in addressing the untenable position which Plaintiff continued to advance by repeatedly relying on witness testimony that does not appear in the record. Defendant had to pay for and review the transcript, a step that Plaintiff's counsel should have taken in this instance after having been put on notice of the concern. More specifically, Defendant paid $354.25 for the relevant portion of the transcript to address the allegations put forth by Plaintiff. More importantly than the cost associated with the purchase of the transcript, however, was the injury caused

by continuing to subject the Defendant to the hassle of defending against this advance by Plaintiff. Consequently, Defendant requests that Plaintiff and any future litigants be deterred from engaging in similar conduct. Defendant defers to this Court's judgment as to whether this can be accomplished by way of a non-monetary admonishment, or whether monetary sanctions are warranted based on the considerations delineated in Fed.R.Civ. P. 11(B).[2]

WHEREFORE, for the foregoing reasons, Defendant's position is that the Court may find there was a Rule 11 violation in this matter when, both at trial and in a later motion for a new trial, Plaintiff continuously relied on witness testimony that does not appear in the record. Defendant wishes to deter Plaintiff and future litigates from further similar activity.

Respectfully submitted this the 21st day of February 2023.

                                            FISHER & PHILLIPS LLP

                                            */s/Lisa Ann McGlynn*
                                            Lisa Ann McGlynn, Esq.
                                            Florida Bar No.: 0056327
                                            lmcglynn@fisherphillips.com
                                            101 E. Kennedy Blvd., Suite 2350
                                            Tampa, Florida 33602
                                            Telephone: (813) 769-7500
                                            Facsimile: (813) 769-7501

---

[2] Defendant recognizes that Plaintiff's counsel is a sole practitioner and the Court may wish to consider this in evaluating whether a written admonishment is sufficient to deter future conduct. Defendant also notes that Plaintiff was personally sanctioned by Magistrate Irick to pay $675.00 following the settlement conference in this matter. (Doc. 102). Plaintiff has never paid the ordered sanctions.

FP 46364917.1

*s/ Amy Leigh Allen*
Amy L. Allen (PA Bar #201137)*
FEDEX GROUND PACKAGE SYSTEM, INC.
1000 FedEx Drive
Moon Township, PA 15108
Tel: (412) 262-6702
Fax: (412) 859-5450
Email: amy.allen2@fedex.com
*Admitted Pro Hac Vice

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following via electronic mail:

Curtis B. Lee, Esq.
PO Box 93181
Lakeland, Florida 33804
cbleelaw@gmail.com

*/s/Lisa Ann McGlynn*
Lisa McGlynn

- 10 -

FP 46364917.1